1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

SANDRA HANCOCK,

                              Plaintiff,

        v.

MICHAEL J. ASTRUE, Commissioner of
Social Security Administration,

                              Defendant.

No. CASE NO.  C09-5343RJB

REPORT AND RECOMMENDATION

Noted for April 2, 2010

        This matter has been referred to Magistrate Judge J. Richard Creatura pursuant to 28

U.S.C. § 636(b)(1)(B) and Local Magistrates Rule MJR 4(a)(4) and as authorized by Mathews,

Secretary of  H.E.W. v. Weber, 423 U.S. 261 (1976).  This matter has been fully briefed, and

after reviewing the record, the undersigned recommends remand to the administration for further

consideration.

INTRODUCTION AND PROCEDURAL HISTORY

        It is not the function of this court to re-weigh the evidence presented to the ALJ, but

rather to determine if the ALJ has properly considered the evidence upon which the ALJ relies in

reaching a decision.  Here, the ALJ failed to properly consider the medical evidence, including

REPORT AND RECOMMENDATION - 1

plaintiff's vertigo, mental impairments, and treating physician.  Therefore, the decision should be remanded for further evaluation.

Plaintiff Sandra Hancock was born in 1949.  Tr. 74.  She has a high school education.  Tr. 84.  From 1997 until January 31, 2002, plaintiff worked as a bookkeeper for a landscaping business.  Tr. 79-80.  Afterwards she worked only part-time helping her husband run their business.  Tr. 79.

In 1994, plaintiff was involved in a motor vehicle accident, injuring her back.  Tr. 79, 214.  Since the accident, plaintiff has had pain in her back, particularly her sciatic nerve.  *Id*. Plaintiff alleges:

> I can't sit, stand, or bend over.  I am not allowed to climb ladders or stairs.  If I stand or sit for more than 10 minutes, my legs and feet go numb.  I have vertigo after the accident so I can't bend over.  I am in constant pain.  I only sleep about 2 hours per night because of that.  When I become really exhausted, I have to take sleeping pills to get any rest.

*Id*.  Plaintiff testified that she stopped working as a full-time bookkeeper in 2002 because the pain was too much.  Tr. 245.  Due to a complicated divorce, plaintiff was unable to obtain or pay for needed medical treatment for a period of time.  Tr. 240-44,

On May 11, 2005, plaintiff filed an application for disability income benefits with the Social Security Administration.  Tr. 15.  Plaintiff alleges she is entitled to disability benefits since January 31, 2002, when she stopped working full-time.  Tr. 15, 79.  After the application was denied initially and upon reconsideration, plaintiff requested an administrative hearing.  Tr. 54.  The hearing subsequently occurred on February 26, 2008, conducted by an administrative law judge ("ALJ").  Tr. 236-50.  Seeing a need for further evidence, the ALJ requested further evidence in the form of an X-ray or MRI to substantiate plaintiff's back pain.  Tr. 247-50.

On July 11, 2008, the ALJ completed his review of the record and issued a decision denying plaintiff's application.  Tr. 15-23.  The ALJ found that plaintiff had the following severe

impairments: degenerative disc disease of the lumbar spine with left leg radiculopathy and obesity. Tr. 17.  However, the ALJ found that these impairments did not preclude plaintiff from being able to perform a full range of medium duty work.  Tr. 18.  Specifically, the ALJ concluded plaintiff could perform past work as an invoice clerk.  Tr. 22.  After the Appeals Council declined review, the ALJ's decision became the administration's final decision.  Tr. 4-6.

Plaintiff now seeks judicial review of the ALJ's decision, filing her Complaint on June 11, 2009.  Plaintiff argues the following four issues:

1.      Did the ALJ err by improperly rejecting opinions of plaintiff's treating and examining physicians?

2.      Did the ALJ err by failing to find that plaintiff's sleep disorder, depression, headaches and vertigo were "severe" impairments at step-two?

3.      Did the ALJ err by failing to properly assess plaintiff's credibility?

4.      Did the ALJ err at step-four by finding that plaintiff could return to her past relevant work as an invoice clerk?

Plaintiff's Reply Brief, Doc. 18.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court may set aside the Commissioner's denial of social security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole.  Bayliss v. Barnhart, 427 F.3d 1211, 1214 (9th Cir. 2005).  "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Richardson v. Perales, 402 U.S. 389, 201 (1971); Magallanes v. Bowen, 881 F.2d 747, 750 (9th Cir.1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist.  Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.1995).  While the Court is required to examine the record as a whole, it may

REPORT AND RECOMMENDATION - 3

neither reweigh the evidence nor substitute its judgment for that of the Commissioner.  Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is susceptible to more than one rational interpretation, it is the Commissioner's conclusion that must be upheld.  Id.

Plaintiff bears the burden of proving that she is disabled within the meaning of the Social Security Act (the "Act").  Meanel v. Apfel, 172 F.3d 1111, 1113 (9th Cir. 1999).  The Act defines disability as the "inability to engage in any substantial gainful activity" due to a physical or mental impairment which has lasted, or is expected to last, for a continuous period of not less than twelve months.  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  Plaintiff is disabled under the Act only if her impairments are of such severity that she is unable to do previous work, and cannot, considering her age, education, and work experience, engage in any other substantial gainful activity existing in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

## DISCUSSION

### 1.    The ALJ Failed To Properly Evaluate Plaintiff's "Severe" Impairments

Step-two of the administration's evaluation process requires the ALJ to determine whether an impairment is severe or not severe.  20 C.F.R. §§ 404.1520, 416.920 (1996).  The step-two determination of whether a disability is severe is merely a threshold determination of whether the claimant is able to perform her past work.  Hoopai v. Astrue, 499 F.3d 1071, 1076 (9th Cir. 2007).  A finding that a claimant is severe at step-two only raises a prima facie case of a disability.  Id.  See also Tackett v. Apfel, 180 F.3d 1094, 1100 (9th Cir.1999).

An impairment is "not severe" if it does not "significantly limit" the ability to do basic work activities.  20 C.F.R. §§ 404.1521(a), 416.921(a).  The Social Security Regulations and Rulings, as well as case law applying them, discuss the step-two severity determination in terms

REPORT AND RECOMMENDATION - 4

of what is "not severe."  According to the regulations, "an impairment is not severe if it does not significantly limit [the claimant's] physical ability to do basic work activities."  20 C.F.R. §§ 404.1520(c), 404.1521(a)(1991).  Basic work activities are "abilities and aptitudes necessary to do most jobs, including, for example, walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling."  20 C.F.R. § 140.1521(b); Social Security Ruling 85- 28 ("SSR 85-28").  An impairment or combination of impairments can be found "not severe" only if the evidence establishes a slight abnormality that has "no more than a minimal effect on an individual's ability to work."  Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir.1988) (adopting SSR 85-28).

Here, the ALJ found the evidence supported only two severe impairments: degenerative disc disease of the lumbar spine with left leg radiculopathy and obesity.  Tr. 17.  Plaintiff argues the ALJ should have considered her sleep disorder, depression, headaches and vertigo as "severe" impairments at step-two in the administrative process.  After reviewing the record, the undersigned finds the ALJ did not properly consider the evidence at step-two.

The ALJ did not include vertigo as a severe impairment because he found the evidence did not support symptoms for a continuous period of twelve months.  Tr. 18.  The record presents evidence that plaintiff was more than minimally effected by vertigo for a significant time.  For instance, Dr. Epley examined plaintiff on complaints of vertigo in January 2002.  Tr. 151.  Dr. Epley noted plaintiff has previously been treated for vertigo in 1996 and 2001.  Plaintiff was treated and the symptoms improved.  Tr. 158.  However, plaintiff reported that "putting her head back, laying on her right side, or looking down will bring on imbalance, which last only a few seconds."  Id.  In December 2003, plaintiff reported issues with balance and dizziness were continuing problems.  Tr. 164.  As recent at April 2008, plaintiff reported difficulties due to

REPORT AND RECOMMENDATION - 5

vertigo.  Tr. 217.  Plaintiff has presented objective medical evidence showing that she has an impairment that would produce more than a minimal effect on her ability to perform work.  The ALJ erred when he found plaintiff's vertigo was not severe at step-two.

Similarly the ALJ erred when he did not find plaintiff's depression was severe at step-two.  Numerous times Dr. Badolato and other examiners noted Ms. Hancock's abnormal emotional reactions on examination.  Tr. 149, 133, 185, 198.  Dr. Webster and Dr. Badolato specifically diagnosed depression.  Tr. 208-09, 218.  At the hearing, the ALJ noted plaintiff's emotional state and the fact that she was taking prescription medication for anxiety.  Tr. 242, 244.

Based on a careful review of the record, this court finds plaintiff presented sufficient evidence to support "severe" impairments that were not considered by the ALJ.  Remand to the administration for further consideration of the medical evidence and development of the record, particularly with regard to plaintiff's mental status, is warranted.

### 2.    *The ALJ Erred When He Evaluated Medical Opinion Evidence*

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician.  Lester v. Chater, 81 F.3d 821, 830 (9th Cir.1996).  Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." *Id.* at 830-31.  However, the ALJ "need not discuss all evidence presented" to him.  Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir.1984) (citation omitted).  The ALJ must only explain why "significant probative evidence has been rejected." *Id.*

REPORT AND RECOMMENDATION - 6

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant.  Lester, 81 F.3d at 830.  On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole."  Batson v. Commissioner of Social Security Administration, 359 F.3d 1190, 1195 (9th Cir. 2004); Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir.2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir.2001).  An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician."  Lester, 81 F.3d at 830-31.  A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record."  Id.; Tonapetyan, 242 F.3d at 1149.

The ALJ is entitled to resolve conflicts in the medical evidence.  Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987).  The ALJ may not, however, substitute his own opinion for that of qualified medical experts.  Walden v. Schweiker, 672 F.2d 835, 839 (11th Cir. 1982).  If a treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing "specific and legitimate reasons" supported by substantial evidence in the record for doing so.  Murray v. Heckler, 722 F.2d 499, 502 (9th Cir. 1983).  "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician."  Lester, 81 F.3d at 831.  In Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989), the Ninth Circuit upheld the ALJ's rejection of a treating physician's opinion because the ALJ relied not only on a nonexamining physician's testimony, but in addition, the ALJ relied on laboratory test results, contrary reports from examining physicians and on testimony from the claimant that conflicted with the treating physician's opinion.

REPORT AND RECOMMENDATION - 7

Here, plaintiff argues the ALJ failed to properly consider the medical evidence.  Plaintiff specifically argues the ALJ improperly rejected the opinions of Dr. Badolato, a treating physician, and Dr. Ramsthel, an examining physician.  This court has reviewed the argument and agrees.  The ALJ did not provide legitimate reasons for rejecting or limiting the weight of the medical opinion evidence of these two physicians.

Dr. Badolato was plaintiff's treating physician and the ALJ relied on several of Dr. Badolato's reports in his opinion.  Tr. 17, 19.  On March 7, 2008, Dr. Badolato completed a questionnaire prepared by plaintiff's attorney, in which Dr. Badolato found plaintiff significantly more impaired compared to the ALJ's assessment.  Tr. 204-210.  The ALJ rejected Dr. Badolato's assessment, and instead gave more weight to an assessment completed by Dr. Webster.  Tr. 22.  The ALJ wrote, "I give more weight to Dr. Webster's assessment because it is based on a more objective and comprehensive examination, as previously discussed."  Tr. 22.

Upon request of the Social Security Administration, Dr. Ramsthel examined plaintiff on September 10, 2005.  Tr. 168-73.  Dr. Ramsthel opined that plaintiff was capable of performing less than sedentary work due to her recurrent vertigo and degenerative changes in the lumbar spine with some neuropathy on the left as well as chronic back and leg pain, Dr. Ramsthel also diagnosed plaintiff with obesity.  Tr. 170-71.  Dr. Ramsthel based his opinion on his own examination of plaintiff including range of motion testing and a review of records from Dr. Epley and Dr. Badolato.  The ALJ rejected Dr. Ramsthel's opinion.  The ALJ stated, "I do not give any weight to this assessment.  I emphasize that because of the limited exam he performed, he did not have objective basis in support of these limitations."  Tr. 21.

The ALJ's determination that Dr. Webster's examination was more comprehensive or objective than Dr. Ramsthel's examination or Dr. Badolato's examinations is not supported by

the record.  There is no evidence that Dr. Webster's examination was more comprehensive or more objective than either Dr. Badolato's opinion – an opinion formed over the course of years of treatment and examination – or Dr. Ramsthel's opinion.

Dr. Webster examined plaintiff a single time on April 23, 2008.  Tr. 220-26.  The scope of Dr. Ramsthel's physical examination was equal to Dr. Webster's.  Both performed a general examination, evaluated coordination/station/gait; range of motion; straight leg raising; gross and fine motor skills; motor strength; sensory examination; and reflex testing.  Tr. 217-18, 170-71.  The tests performed were essentially the same.  The difference between the two examinations is that Dr. Ramsthel reviewed records from Dr. Badolato and from Dr. Epley, the otolaryngologist who treated Ms. Hancock's vertigo in 2001 and 2002.  Tr. 168.  Dr. Webster did not review any medical records before she arrived at her conclusions.

The ALJ implied that Dr. Ramsthel's review of the treatment notes was of no consequence because the reports of Dr. Eply and Dr. Badolato were based on plaintiff's subjective allegations.  Tr. 21.  Certainly, plaintiff's doctors listened to plaintiff's subjective complaints, but the record shows that they did not rely solely on her subjective statements.  The record shows both doctors rely extensively on their own objective examination and testing.  Dr. Epley monitored Ms. Hancock's eye movement during testing with infrared goggles to confirm she was experiencing vertigo.  Tr. 152-64.  Dr. Badolato examined plaintiff and noted examination findings such as decreased range of motion, Tr. 145, tearfulness, Tr. 149, 133, 185, 198, low back tenderness, Tr. 149, 142, 126, 194, numbness in her right upper extremity and legs, Tr. 144, 142, slow movement, Tr. 130, swelling in her right lower leg, Tr. 126, positive straight leg raising, Tr. 124, decreased reflexes, Tr. 124, and an antalgic gait, Tr. 185, 198.  Dr.

REPORT AND RECOMMENDATION - 9

Badolato ordered the August 2002 MRI to confirm plaintiff's complaints of pain in her back.  Tr. 147.

In sum, the evidence does not support the ALJ's finding that Dr. Webster's one-time exam is more comprehensive or objective than either Dr. Badolato's or Dr. Ramsthel's opinions. Dr. Badolato's opinions are based on his clinical assessment of plaintiff's impairments and not solely on plaintiff's subjective complaints.  Dr. Epley used objective means to confirm plaintiff's allegations of dizziness and loss of balance.  In turn, Dr. Ramsthel's opinion is not legitimately rejected because he relied on Dr. Badolato and Dr. Epley's reports.  The ALJ failed to provide legitimate reasons to reject or limit the weight of the opinions provided by Dr. Badolato and Dr. Ramsthel.  In light of this error and the error in evaluating plaintiff's "severe" impairments at step-two, the matter should be remanded for further reconsideration.

<u>CONCLUSION</u>

Based on the foregoing discussion, the Court should remand the matter to the administration for further consideration.  On remand the administration must reconsider the medical evidence and reassess plaintiff's severe impairments at step-two.  In light of a new step-two finding and reevaluation of the medical evidence it will be equally necessary for the administration to reassess plaintiff's testimony and the remaining steps in the five-step administrative process.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  <u>Thomas v. Arn</u>, 474 U.S. 140 (1985).  Accommodating the

REPORT AND RECOMMENDATION - 10

1    time limit imposed by Rule 72(b), the clerk is directed to set the matter for consideration on

2    **April 2, 2010**, as noted in the caption.

3         DATED this 12th day of March, 2010.

4

5

6    J. Richard Creatura

7    United States Magistrate Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPORT AND RECOMMENDATION - 11